## Richmond.

### BOWMAN V. NEWTON AND OTHERS.

#### January 22, 1920.

VENDOR AND PURCHASER—*Liability of Purchaser for Interest when Taking Possession.*—The vendee of real property, whether at a judicial or private sale, must pay interest on the unpaid purchase money from the time he takes possession of the property, where he takes possession before the completion of the contract of sale and such contract is silent as to interest on unpaid purchase money; and this is true even though the vendor assents to such advance taking of possession without any stipulation as to interest. Equity implies a promise on the part of the vendee to pay interest on the unpaid purchase money from the date on which he takes possession.

Appeal from a decree of the Circuit Court of Norfolk county, by a purchaser at partition sale, from decree holding him for interest on unpaid purchase money.

*Affirmed.*

This suit involves the single question of whether the appellant, Bowman, the vendee of certain real estate, must pay interest on the unpaid purchase money from the time he took possession of the property. The decree of the court below, of date July 15, 1918, under review so holds.

The executory contract of sale was made in the following manner. The appellant on June 25, 1917, made the following offer of purchase in writing:

"Geo. F. Newton, Plaintiff,

    vs.

"Newton Est. et als.

"IN CHANCERY.

"To Robert W. Tomlin, Counsel in above cause:

"I hereby offer the sum of ten thousand dollars cash for the Mason Creek farm owned by Geo. F. Newton and the estate of W. L. Newton, in Norfolk Co., Va., as shown on the plat thereof made Feb. 8, 1916, by Jno. M. Balding, containing high land 18.4 acres, out to high water mark 21.3 acres, and in the whole 32 acres, the same to be conveyed as described *is* said plat, and copy of plat to accompany the deed.

"My offer is, of course, subject to examination of the title, and the same to prove satisfactory, and ten days to be allowed for such examination.

"The above offer of cash means that I am to pay the amount when the United States Government makes settlement with me for my land taken at Pine Beach in said county for the new Naval Base.

(Signed)                    "W. E. BOWMAN."

The chancery cause referred to in the caption to such offer of purchase is the cause before us. It is a suit for partition of the said real estate. There had been no decree of sale entered prior to said offer and no commissioner of court appointed to make sale of the real estate. The real estate belonged to the following parties: One-half interest to Geo. F. Newton. The widow of W. L. Newton, dec'd, was entitled to her dower in the other half interest; and, subject to such dower, one-half of such other half interest belonged to the Norfolk Protestant Hospital, and the remaining one-half of such half interest belonged to an infant daughter of W. L. Newton, dec'd, with remainder over to said hospital should the said infant not survive the said widow. The second half interest mentioned was devised

and passed to the parties entitled as aforesaid under the will of W. L. Newton, dec'd, of which there was an executor. The suit for partition was instituted by Geo. F. Newton as plaintiff and all of the other parties referred to, including the executor, were and are parties defendant thereto, a guardian *ad litem* being duly appointed and acting for the infant defendant. Mr. Tomlin was and is counsel in the cause for the said plaintiff and all of the defendants except the said hospital which was and is represented by other counsel.

Prior to said offer of purchase, to-wit on August 6, 1915, an order was entered in the cause referring it to a commissioner in chancery to enquire and report upon the usual enquiries in such a suit, among which were the enquiries of whether partition could be made in kind and if not whether sale for partition would best promote the interests of all parties entitled, etc., but such order of reference had not been executed.

Pending the execution of the order of reference the property was listed with several real estate agents for sale at the price of $10,000, subject to the confirmation of sale by the court. This had resulted in no offer being made for the property greater than $7,000, and one prospective purchaser stating "that $8,000 was all he would think of giving and he was doubtful about that," until the appellant made said written offer of purchase.

The appellant was a customer of one of said real estate agents and the said offer of purchase by appellant was obtained through the services of such real estate agent.

The testimony for appellant tends to show that he was induced to offer a larger price for the property than he considered its actual market value at the time on account of the following situation in which he was then placed. Certain real estate owned by him at Pine Beach had been taken by the United States government for a Naval Base; the

government had notified appellant to vacate such property and he desired to purchase other real estate upon which to move. The government, however, had not, up to the time of said written offer of purchase, paid appellant for his Pine Beach real estate, but his confident expectation and the like expectation of both the counsel and all the parties to this suit (other than the infant), at the time of such offer of purchase, was that there would be no delay about appellant's being promptly paid by the government for his real estate taken by it as aforesaid.

All of appellant's negotiations for the purchase of the property involved in this suit were with Mr. Tomlin as counsel, and were had in two personal interviews prior to the entry of the decree of July 10, 1917, presently to be mentioned. The first interview was on May 4, 1917, and the second on June 25, 1917, which resulted in said written offer of purchase.

There is no evidence that anything was said by appellant or Mr. Tomlin in the May 4th interview as to interest on unpaid purchase money or as to when possession was to be taken by appellant if he became the purchaser. Moreover there is no evidence that there was any contract of sale attemped to be made in the May 4th interview. The testimony on both sides concurs in establishing the fact that Mr. Tomlin was at the time engaged in the trial of a case and postponed the subject to another time, requesting appellant to come to his office and see him at a later time about the matter. Then followed the second interview aforesaid on June 25, 1917.

There is no evidence that anything was said by appellant or Mr. Tomlin in the June 25th interview as to interest on unpaid purchase money or as to when possession was to be taken by appellant if he became the purchaser.

The next day after said written offer was made, to-wit, on June 26, 1917, by consent of all parties to the suit by

counsel, one of the commissioners in chancery of the court proceeded to execute said order of reference, and, such counsel and the guardian *ad litem* for the infant aforesaid being present, took certain depositions of witnesses, and among them the deposition of Mr. Tomlin who filed said written offer of purchase. The depositions were to the effect that partition of the property could not be made in kind; that a sale was necessary for partition and that the offer of purchase by appellant was acceptable to and its confirmation by the court was for the best interest of all parties entitled to the property. Accordingly the commissioner filed his report on June 30, 1917, in which he "recommends this sale."

Nothing is said in the depositions taken before such commissioner or in his report on the subject of possession or interest.

On July 10, 1917, the cause came on to be heard on the papers formerly read, the said commissioner's report and evidence therewith, to which report no exception had been taken, was argued by counsel, and, so far as material to be noted, the following decree was entered.

"On consideration whereof, the court doth confirm the said report in all respects, and, being of opinion that the sum of $10,000 is a fair and proper price for the property in the bill and proceedings mentioned, doth so decide and doth adjudge, order and decree that Robert W. Tomlin and John B. Jenkins, Jr., who are hereby appointed special commissioners for that purpose, upon payment to them by W. E. Bowman of the said sum of $10,000 in cash, do execute and deliver to the said Bowman a proper and sufficient deed * * conveying to the said Bowman the property in the bill and proceedings mentioned * * bounded and described upon a plat thereof * * etc.".

It is an uncontroverted fact in the case that at the time the decree just mentioned was entered the appellant, Mr.

57

Bowman, and Mr. Tomlin and all the adult parties in interest contemplated no delay in the government making settlement with the appellant for his land taken at Pine Beach as aforesaid and no delay from any other cause in the completion of the contract of sale.

The preponderance of the evidence in the cause is to the effect that appellant took possession of the property purchased by him on July 10, 1917, after the decree of court was entered on that day. He took this possession with the assent of Mr. Tomlin, but without any new consideration therefor moving from appellant and without having paid any part of the purchase money or having received a deed of conveyance.

The testimony is conflicting as to whether or not Mr. Tomlin stated to the appellant that if he took possession before he paid the purchase money he would have to pay interest. Appellant testifies that the subject of interest was not mentioned by Mr. Tomlin to him until May, 1918. Mr. Tomlin on the other hand testifies that he expressly stated to appellant before he took possession that if he did so prior to his payment of the purchase money he would have to pay interest thereon.

Appellant, however, testifies that the assent of Mr. Tomlin to the taking of possession aforesaid was not given until after the decree of July 10, 1917, was entered, as will appear from the following quotation from appellant's testimony *ore tenus* before the court below on cross-examination by Mr. Tomlin:

"Q. Who gave you permission to occupy this farm?

"A. You did.

"Q. When and where?

"A. In my machine when we were going back from the courthouse.

"Q. You mean when we came over here to have the decree of July the 10th entered?

"A. After the decree had been entered."

It further appears in evidence that unexpectedly to all concerned there was a delay in the government settlement aforesaid with appellant and a consequently unexpected delay in the completion of the said contract of sale. Appellant did not collect the money aforesaid from the United States government until May 4, 1918. On that day appellant had an interview with Mr. Tomlin at the office of the latter, who was one of the special commissioners as aforesaid authorized under decree of court in this cause to collect the said purchase money and deliver deed of conveyance of the property to appellant, and said "I am ready to settle." Mr. Tomlin said "all right; here is the deed signed by Mr. Jenkins and myself." And appellant said "What do I owe you?" Mr. Tomlin said "$10,000.00 and interest." Thereupon, appellant said "I don't owe any interest" and refused to pay any interest, but offered to pay $10,075.00 (the $75.00 to cover what the appellant considered a fair rent for the property for the period from July 10, 1917, to May 4, 1918) if Mr. Tomlin would accept such $10,075.00 in full. This offer Mr. Tomlin refused to accept and declined to deliver the deed.

There were other proceedings in the cause consisting of a special commissioner's report and decree thereon entered August 2, 1917, as to which appellant takes the position that he is not bound and his rights should not be affected by certain matters therein contained. But as the court below, as appears from its opinion on the subject in the record, sustained such position of appellant and was not influenced in its decision; which is embodied in the decree of July 15, 1918, under review, by said proceedings, and as such proceedings are given no consideration or weight whatever, in the opinion of this, the appellate, court, all detailed mention of such proceedings is omitted.

*S. Burnell Bragg* and *Thomas W. Shelton,* for the appellant.

*E. R. F. Wells,* for the appellees.

Sims, J., after making the foregoing statement, delivered the following opinion of the court.

It is earnestly argued for appellant that the contract of sale in question was with the parties to the suit through their counsel, subject to the confirmation thereof by the court, and that having been confirmed by the court the contract became as binding upon the court as upon the parties and evidences what is in truth a private and not a judicial sale, citing *Christian* v. *Cabell,* 22 Gratt. (63 Va.) 82, 97.

In the view we take of the case, considering the provision fixing the date or time for the completion of the contract and the absence of any provisions therein with respect to possession and interest, it is immaterial whether the contract of sale in question be regarded as evidencing a private or a judicial sale. In either case the contract was silent both as to interest on unpaid purchase money and as to when possession was to be taken by the vendee. As appears from the statement preceding this opinion appellant himself testifies in the cause that not until after the decree of July 10, 1917, was entered, was there any assent on the part of the owners of the property (and that through counsel who was not attorney for all of them) to appellant's taking possession before payment of the purchase money; and that it was not until May 4, 1918, that the subject of interest in unpaid purchase money was even mentioned between appellant and such counsel. It also appears from the aforesaid statement that there was at no time communicated to the property owners or to Mr. Tomlin as counsel any proposal or offer of pur-

chase by appellant which was conditioned upon possession of the property being allowed to be taken by appellant prior to the completion of the contract by the payment of the purchase money; and that there was no meeting of minds on any contract of sale prior to the written proposal or offer of purchase made by appellant to date June 25, 1917, and that proposal was silent both as to interest and possession. If we could regard that proposal as having been then accepted by the owners of the property through their counsel and that the contract of sale was thus at that time consummated, still the contract of sale would have been one which would have been silent on the two subjects mentioned. And there is no claim even in the testimony for appellant that the written proposal was supplemented at the time it was made by any mention of either of said subjects even if the written proposal had been incomplete and could have been so supplemented. The evidence in the cause however admits of no other conclusion than that the contract of sale was not consummated until the decree of July 10, 1917, was entered accepting the proposal. Then and not until then was there a contract of sale; and such contract was thereupon evidenced by the proposal and decree when read together. They are both set out in the aforesaid statement preceding this opinion and when read together they disclose a contract which on the two subjects aforesaid, interest and possession, is absolutely silent, as aforesaid.

As to the taking of possession by appellant: The date or time fixed by the said contract of sale for the completion of the contract was when the United States government should make settlement with the appellant, as set out in said written proposal. That was the date or time fixed by the contract for the payment of the whole purchase money and the delivery of the deed of conveyance. If we were to regard the testimony of Mr. Tomlin, which is in

conflict with that of and for the appellant on the subject of the assent to the taking of the possession referred to in the statement aforesaid, as never having been given in the cause, and were to take the testimony of appellant as stating the facts on that subject, still appellant took possession of the property purchased prior to the completion of the contract without any new consideration moving therefor from him. We have no need therefore, to pass upon said conflict of testimony. And even if we could regard the owners of the property as having assented through Mr. Tomlin to such advance taking of possession without any stipulation as to interest, that would not alter the case. In such case equity implies a promise on the part of the vendee to pay interest on the unpaid purchase money from the date on which he takes possession. *Barnett* v. *Cloyd's Ex'rs,* 125 Va. 546, 100 S. E. 674.

The decree of July 15, 1918, aforesaid under review must, therefore, be affirmed.

*Affirmed.*